UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **Latisha Johnson**, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**Villa Healthcare Management, Inc.**, *et al*<br><br>Defendants. | No. 21-cv-03629<br><br>JUDGE MANISH S. SHAH<br><br>MAGISTRATE M. DAVID WEISMAN<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |

Now comes Plaintiff, Latisha Johnson, by and through counsel, and hereby submits the following in opposition to Defendants' Motion for Judgement on the Pleadings (hereafter "Defendants' Motion") (ECF# 21-22).

## I.    INTRODUCTION

Defendants' Motion would have the Court declare that Plaintiff was employed by only one of the named Defendants and that this sole Defendant is entitled to its affirmative defense regarding the executive exemption to state and federal overtime requirements on the pleadings. As, the Supreme Court has noted that "the term 'employee'" in the FLSA has "'the broadest definition . . . ever . . . included in any one act.'" *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945) (quoting 81 Cong. Rec. 7657 (1937) (statement of Sen. Hugo Black)). Moreover, it is Defendants' burden to establish that they meet all the requirements of the executive exemption which is a fact intensive inquiry to be made on a case-by-case basis. *See Demos v. City of Indianapolis*, 302 F.3d 698, 700 (7th Cir. 2002). As detailed below, Plaintiff is entitled to discovery on these issues.

1

## II.    LAW AND ARGUMENT

### A.    Plaintiff is entitled to discovery on Defendants' status as a single employer, joint employers and alter egos.

Plaintiff's First Amended Complaint (hereafter "Plaintiff's Complaint") sets forth three distinct legal principles establishing Defendants' joint liability: (1) Defendants are a single employer; Defendants are joint employers; and (3) Defendants are alter egos of one another. (*See* ECF #17 at ¶¶ 27-56). Defendants' Motion asks the Court to conclude as a matter of law, without any discovery whatsoever, that it is beyond doubt that Plaintiff cannot prove any set of facts which would establish Defendants' liability under any of the three legal theories.

#### 1.    *Single Employer Liability*

Defendants' Motion makes no mention whatsoever of "single employer" liability. It is an oversight of convenience because to acknowledge single employer liability, Defendants cannot credibly suggest that Plaintiff can prove no set of facts which establish that Defendants are liable as a single employer. Defendants cannot rectify their silence by addressing single employer liability in any forthcoming reply brief as any such argument has been waived. *Sanchez v. Global Parking Mgmt.*, Case No. 14-cv-04611, 2015 U.S. Dist. LEXIS 93782 at *7 (N.D. Ill. Jul. 20, 2015) citing *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012). ("After Plaintiffs raised Car Parking's failure to challenge the successor and single employer theories in their response, Car Parking argued for the first time in its reply that Plaintiffs also has failed to state claims under those theories as well. By waiting until its reply to challenge successor and single employer liability, Car Parking has waived those arguments.").

Defendants' waiver aside, Plaintiff has adequately pleaded that all Defendants are subject to liability under the FLSA and IMWL as a single employer. All courts "agree that to fulfill Congress's remedial intent, the term 'employer' should be applied broadly." *Schneider v.*

2

*Cornerstone Pints, Inc*., 148 F. Supp. 3d 690, 696 (N.D. Ill. 2015) (Shah, J.) citing *Boucher v. Shaw*, 572 F.3d 1087, 1090 (9th Cir. 2009); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991). "[T]he term 'employer' under the FLSA is broader than how it is understood at common law." *Id.* The "single employer doctrine" provides that "a group of distinct but closely affiliated entities may be treated as a single employer in an FLSA collective action." *Bruske v. Capitol Watertown Sprechers, LLC*, Case No. 19-cv-851, 2021 U.S. Dist. LEXIS 159562 at *16 (W.D. Wisc. Aug, 24, 2021); *see also Sanchez, supra* 2015 U.S. Dist. LEXIS 93782 at *7 (N.D. Ill. Jul. 20, 2015). "Under this standard, courts must consider: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Id.* citing *Trustees of Pension, Welfare & Vacation Fringe Ben. Funds of IBEW Local 701 v. Favia Elec. Co.*, 995 F.2d 785, 788 (7th Cir. 1993).

Single employer liability has been recognized by this Court since no later than 2015 in *Sanchez, supra*. There, the Court found that Plaintiffs had alleged sufficient facts to establish that six named defendants were jointly liable for wage violations under the FLSA and IMWL. *See Sanchez,* 2015 U.S. Dist. LEXIS 93782 at *10. In denying a motion to dismiss pursuant to Civ. R. 12(b)(6), the Court pointed to allegations that one of the individual defendants had a management role with both corporate defendants and the common nature of the work performed by both corporate defendants. *See id*.

A district court within the Seventh Circuit just recently discussed the single employer theory of liability at length in *Bruske, supra,* 2021 U.S. Dist. LEXIS 159562 at *16 (W.D. Wisc. Aug, 24, 2021). There, the plaintiffs brought FLSA unpaid wage claims against seven named defendants, which the plaintiffs alleged constituted a single employer for the purposes of liability under the FLSA. The *Bruske* court had determined in a prior order that the plaintiffs could proceed

3

on the pleadings under the single employer theory of liability and adopting the same four-factor test espoused by this Court in *Sanchez*. *See id.* at \*18. The court went on to grant plaintiffs' motion for conditional certification as to all defendants even though the plaintiffs performed worked at only one location-specific corporate entity. *See id*. The court found sufficient facts supporting the notion that the separate defendants were a single employer at the conditional certification stage of discovery, such as the corporate defendants sharing common ownership, common investors, a common accountant, and a common employee handbook. *See id.* at \*19-20.

Here, Plaintiff's Complaint alleges that the various location-specific corporate entity Defendants are in fact a "single employer" and Plaintiff's Complaint puts forth plausible factual allegations supporting such a finding that go far beyond mere recitations of the elements of single employer liability. Specifically, Plaintiff alleges that when she applied for her employment, she filled out a standard "villa" application which does not differentiate between any location-specific Defendant. (ECF #17 at ¶ 28). Plaintiff's Complaint alleges further that all Defendants hold themselves out to the public as one unified company, i.e. Villa Healthcare. (*Id.* at ¶ 30) citing https://villahc.com/ (last visited Nov. 13, 2021). Plaintiff's Complaint alleges that Defendants use a common employee portal, branded "Villa Connect", in which Villa Healthcare communicates company information and directives to all its employees, including Plaintiff, regardless of which Location Specific Defendant any particular employee may work at. (*Id.* at ¶ 31) citing https://advocate.socialchorus.com/villahealthcare/villahc/welcome (last visited Nov. 13, 2021).

Plaintiff's Complaint alleges further that Defendants' employees, including Plaintiff, are managed at a common corporate level and that the human resources functions for all Defendants' employees are housed within Defendants' common corporate headquarters located in Lincolnwood, Illinois. (*Id.* at ¶ 32). Plaintiff's Complaint alleges further that Defendants have

common management such as a singular Chief Financial Officer, one Chief Nursing Officer and one Chief Marketing Officer who oversee all of the Defendants as a single enterprise and single employer. (*Id.* at ¶ 33) citing https://villahc.com/about/team/ (last visited Nov. 13, 2021). Plaintiff's Complaint alleges further that Defendants have common ownership, which consists, at least in part, of Benjamin Israel, Mark Berger and Todd Stern. (*Id.* at ¶ 34). Plaintiff's Complaint also points out that none of Defendants are publicly traded, that facts relevant to Defendants' liability as a single employer are of limited availability to the public, and that additional relevant information will come to light through the process of discovery. (*Id.* at ¶ 35).

Much of the documentary evidence put forth by Defendants in their unified Answer and Motion highlights the plausibility of Plaintiff's allegations. Defendants put forth the Declaration of Benjamin Israel which identifies him as the President of Villa Healthcare Management, Inc. and confirms that he has an ownership interest in all but one location-specific corporate entity. (*See* ECF #20-2 at ¶ 2). Defendants put forth an exemplar of their common online forum for job postings where all location-specific corporate entities post job openings regardless of their location which corroborates Plaintiff's allegations regarding Defendants' common human resources. (*See* ECF #20-3). Defendants put forth identical affidavits from the current administrators of thirty-three location-specific entities which suggests that all location-specific entities are under common direction and control and corroborates the corporate organization suggested in Plaintiff's Complaint. (*See* ECF #20-4). Defendants submit additional affidavits and payroll documents which suggest that all Defendants have a common payroll service and compensation practices across all location-specific entities. (*See* ECF #20-5 through #20-8). Defendants also submit Plaintiff's job application and termination notice which confirm that Defendants utilize standard

5

personnel forms and submit the same to a common human resources department. (*See* ECF #20-9).

Most damaging to Defendants' ruse of being separate and distinct is their submission of the Job Description for LPN Unit Manager which is undoubtedly uniform across all location-specific entities. (*See* ECF #20-10). The Job Description indicates that LPN Unit Managers must adhere "to the Villa Way of Kindness in all personal and professional interactions while on duty in and around the facility." *Id.* at p. 1. In other words, Defendants have a uniform code of conduct in place at all location-specific entities. The Job Description generally states that the employee "[f]ollows all Villa policies and procedures…" *Id*. The Job Description makes reference to "Villa core programs", "Villa's Corporate Compliance Program", "in-service training", a "Quality Improvement Committee" and a "Mentor program." *Id* at pp. 2-3. The Job Description refers to uniform computer, password and privacy policies as well as an enterprise-wide "computer clinical record system." *Id.* at p. 3. Most importantly, the job description suggests that, in all likelihood, the pay practices detailed in Plaintiff's Complaint are the same at each location-specific entity.

To reject single employer liability is to condone a corporate shell game whereby any multi-location enterprise can insulate itself from company-wide FLSA and IMWL liability by making the strategic decision to incorporate each of the company's locations as a separate entity. Defining "employer" in such an insulated way runs contrary to the broad remedial purpose of the FLSA and the correspondingly broad definition of "employer" it has historically embodied. *See Schneider*, 148 F. Supp. 3d at 696. Plaintiff has set forth ample specific facts which speak to Defendants' liability as a single employer. Plaintiff should be permitted to proceed to discovery on these allegations and Defendants' Motion should be denied.

2.     *Alter Ego Liability*

Defendants' Motion likewise fails to address their liability under "alter ego" theory and any argument in opposition to alter ego liability that Defendants may attempt to make in any reply has also been waived. *See Sanchez*, 2015 U.S. Dist. LEXIS 93782 at *7 (citations omitted).

Defendants' waiver aside, Plaintiff has sufficiently pleaded that Defendants are liable for the FLSA and IMWL violations alleged in her Complaint under the well-established alter ego theory of liability. *See Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 961 (N.D. Ill. 2017).[1] To establish alter ego liability, "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Nicks,* 260 F. Supp. 3d at 959-960 citing *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751-52 (7th Cir. 2012) (citations and quotations omitted).

When determining whether a unity of interest and ownership exists to justify disregarding separate corporate identities, courts have considered factors such as "inadequate capitalization;

---

[1] *See also Sanchez v. Glob. Parking Mgmt., Inc.*, No. 14-CV-04611, 2015 U.S. Dist. LEXIS 93782, 2015 WL 4429024, at *4 (N.D. Ill. July 20, 2015); *Powers v. Emcon Assocs., Inc.*, No. 14-CV-03006-KMT, 2016 U.S. Dist. LEXIS 36874, 2016 WL 1111708, at *7-8 (D. Colo. Mar. 22, 2016); *Halford v. No Hope Logging, Inc.*, 727 F. Supp. 2d 523, 529 (S.D. Miss. 2010) ("[A]n employer cannot evade the requirements of the FLSA by forming an alter ego company."); *Barba v. Seung Heun Lee*, No. CV 09-1115-PHX-SRB, 2009 U.S. Dist. LEXIS 132415, 2009 WL 8747368, at *5-7 (D. Ariz. Nov. 4, 2009) (finding plaintiffs sufficiently alleged alter ego liability in FLSA minimum wage case where defendant used several corporate entities that were effectively all a single entity to limit liability); *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 366 (S.D.N.Y. 2005) (upholding FLSA verdict based on alter ego liability where entities commingled accounts and funds); *Boland v. Universal Spray Applications, Inc.*, No. 87 C 4673, 1989 U.S. Dist. LEXIS 721, 1989 WL 6498, at *3 (N.D. Ill. Jan. 25, 1989) (allowing alter ego claims to survive summary judgment in FLSA case where parent supervised subsidiary and controlled its management).

failing to issue stock; failing to observe corporate formalities; failing to pay dividends; corporate insolvency; nonfunctioning corporate officers; missing corporate records; commingling funds; diverting assets to an owner or other entity to creditor detriment; failing to maintain an arm's-length relationship among related entities; and whether the corporation is a mere façade for a dominant owner." *Id.* citing *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 521 (7th Cir. 1991) (listing factors including (1) failure to maintain corporate records, (2) commingling of funds or assets, (3) undercapitalization, and (4) one corporation treating the assets of another corporation as its own) (other citations omitted). Other factors that courts have looked to include whether entities used joint business cards and email addresses, and whether held themselves out on their website as one entity. *Id.* citing *Powers v. Emcon Assocs., Inc.*, No. 14-CV-03006-KMT, 2016 U.S. Dist. LEXIS 36874, 2016 WL 1111708, at *7-8 (D. Colo. Mar. 22, 2016) No single factor is determinative, and the Court's inquiry "invariably involves factual questions to be determined by the circumstances of each case." *Id.* citing *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 463 (7th Cir. 1991).

*Nicks* is easily analogous to the instant matter. There, the defendants had eight different facilities, each of which was incorporated as a separate LLC, but collectively branded as "Koch Foods." *Nicks*, 260 F. Supp. 3d at 946. Just as is here, the Koch defendants filed a motion to dismiss citing on *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.,* 536 F.3d 640, 644 (7th Cir. 2008) for the proposition that the plaintiffs failed to establish that each defendant entity exercised control over the plaintiffs' employment. *Id.* at 959. The *Nicks* court found the plaintiffs did not have to establish such control-based requisites where the plaintiffs had sufficient alleged that the location-specific corporate defendants were alter egos. *See id.* at 959-963. In so concluding, the *Nicks* court considered allegations such as the Koch defendants using a centralized reporting and management

8

structure, having common policies across all facilities, deriving profits from the operations of all facilities, comingling finances and accounts, sharing key managerial employees, having a common CEO and COO as key decisions makers across all facilities, holding themselves out on their website as one singular entity, and sharing supplies and products across all facilities. *Id.* at 962.

Here, Plaintiff's Complaint specifically pleads that the location-specific Defendants are alter egos. (*See* ECF #17 at p. 9). Plaintiff alleges that all Defendants present themselves to the public as one unified company – "Villa Healthcare." (*Id.* at ¶ 39) citing https://villahc.com/ (last visited Nov. 13, 2021). Plaintiff alleges that Defendants are controlled, operated and directed by Villa Healthcare Management, Inc. (*Id.* at ¶ 41). Plaintiff alleges that the manner in which she was paid, including the decision not to pay her overtime was not determined by any one specific Defendant. (*Id.* at ¶ 42). Plaintiff alleges further that the reduction in labor costs and increase in profits resulting from the failure to pay Plaintiff and the nurses she seeks to represent was shared and enjoyed by all Defendants. (*Id.* at ¶ 43). Plaintiff alleges further that the location specific entities "pool their assets and liabilities to be shared equally across all Defendants." (*Id.* at ¶ 44). Plaintiff alleges further that "the profits and or losses generated by the operation of any single Location Specific Defendant are shared equally across all Defendants." (*Id.* at ¶ 45). Additionally, Plaintiff alleges that all of Defendants' facilities are managed at a common corporate level, share human resources functions, share common management, share a singular Chief Financial Officer, share a singular Chief nursing officer, share a singular Chief Marketing Officer and have common ownership. (*Id.* at ¶¶ 32-34). Plaintiff explains further that Defendants are not publicly traded, that information relevant to Defendants being alter egos is of limited availability to the public, and that additional relevant information will come to light in the process of discovery. (*Id.* at ¶ 46).

Defendants' Motion is more "sleight of hand" than it is a refutation of any of these allegations. Defendants actually illustrate the plausibility of their status as alter egos of one-another. Defendants brazenly state that Villa Healthcare Management, Inc. has no employees, while also stating that Benjamin Israel is the president of Villa Healthcare Management, Inc., and confirming that Mr. Israel has an ownership interest in 33 of the 35 location specific Defendants. (*See* ECF #20-2 at ¶¶ 2-3). Defendants then submit identical affidavits from the administrators at these same 33 Villa facilities suggesting that they are all under the direction and control of Benjamin Israel. (*See* ECF #20-4). Defendants confirm that they staff all of their facilities in a centralized manner. (*See* ECF #20-3). Defendants submit documentation suggesting that they share the same payroll and compensation practices. (*See* ECF #20-5 through #20-8). Defendants submit documentation suggesting that they do in fact have a centralized human resources department. (*See* ECF #20-9). Lastly, Defendants submit documentation suggesting that Plaintiff's job would be essentially the same regardless of which Villa facility she was actually employed at. (*See* ECF #20-10).

### 3. *Joint Employer Liability*

While ignoring single employer and alter ego liability, Defendants' Motion focuses entirely on the joint employer theory of liability. In doing so, Defendants attempt to focus the Court's entire analysis through the lens of control-based interpretation of "joint employment" which was proposed by the outgoing administration and went into effect on March 16, 2020 and rescinded by the current Department of Labor on July 29, 2021. At the onset, it must be noted that the parties agree that Plaintiff was not employed Defendants during the brief period this administrative guidance was in effect. (*See* Defendants' Motion ECF #22 at p. 2).

10

In Defendants' words, the short-lived Trump-era guidance was a "control-based, 'clear-cut', four-factor test that considered whether the potential joint employer 'actually exercised the power' to 'hire or fire the employee; supervise and control the employee's work schedules or conditions of employment; determine the employee's rate and method of payment; and maintain the employee's employment records.'" (*Id.* at p. 5). Defendants do not posit how or why this brief administrative guidance should be afforded judicial deference. Nor do Defendants address that the regulation itself went into effect after Plaintiff's employment with Defendants had concluded. But, Defendants nevertheless rely on this guidance, positing that Villa Healthcare Management, Inc. has no employees whatsoever, and that Plaintiff cannot allege facts establishing that the other location specific entities exercised control over Plaintiff's employment.

But, Defendants' control-based view of joint employment has been rejected by courts and rescinded by the DOL. *See New York v. Scalia,* 490 F. Supp. 3d 748 (S.D.N.Y. 2020); 86 FR 40939 (Jul. 29, 2021). This is because such a rigid control-based approach is in stark conflict with over 75 years of legislative history and statutory interpretation of the FLSA. *See Id.* at pp. 757-765. This Court has previously recognized that courts "agree that to fulfill Congress's remedial intent, the term 'employer' should be applied broadly." *Schneider v. Cornerstone Pints, Inc*., 148 F. Supp. 3d 690, 696 (N.D. Ill. 2015) (Shah, J.) citing *Boucher v. Shaw*, 572 F.3d 1087, 1090 (9th Cir. 2009); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991). As such, courts examine the "economic realities" in determining whether separate entities are joint employers. *See id.* Defendants misrepresent *Moldenhauer* as mandating evidence of control as a prerequisite to a finding of joint employment. While *Moldenhauer* recognized that such control-based factors could be relevant to a finding of joint employer status, *Moldenhauer* also recognized that "it would be foolhardy to

suggest that these are the only relevant factors, or even the most important." *Moldenhauer*, 536 F.3d at 644 (7th Cir. 2008).

As detailed extensively above Plaintiff's Complaint contains ample specific allegations which depict an economic reality of Defendants operating as one unified business. It is certainly not beyond doubt that Plaintiff cannot establish facts evidencing the same at the close of discovery.

### B.    Defendants cannot make out their exemption defense, as a matter of law, on the pleadings.

The executive exemption of the FLSA is treated as an affirmative defense. *See Jackson v. Go-Tane Servs.* 56 Fed. Appx. 267, 270 (7th Cir. 2002). "It is the employer's burden to prove the application of the executive exemption, an exemption that is to be construed narrowly." *Bankston v. Illinois*, 60 F.3d 1249, 1252 (7th Cir. 1995) citing *Klein v. Rush-Presbyterian-St. Luke's Medical Ctr.*, 990 F.2d 279, 282-83 (7th Cir. 1993).

It is peculiar that Defendants would request judgement that they have met their burden at the pleadings stage. The case that Defendants rely on, *Demos*, affirmed the granting of summary judgment after a fully developed record through discovery. *See Demos v. City of Indianapolis*, 302 F.3d 698, 700 (7th Cir. 2002). Defendants also neglect to mention that the salary basis component of the executive exemption at issue in *Demos* was satisfied only because the defendant, as a government employer, was subject to the Department of Labor's public accountability exception to its no-docking rule. *Id.*

When determining whether any employee qualifies as a bona fide "executive" under the FLSA, a court must review whether an employee's "primary duty" is management. The "primary duty" determination must be made on a case-by-case basis, 29 C.F.R. § 541.103, but "it may be taken as a good rule of thumb that primary duty means the major part, or *over 50 percent* of the employee's time." *Id.* (emphasis added). Other factors that may be considered in the "primary

duty" analysis include: (1) the relative importance of the managerial duties as compared to other types of duties, (2) the frequency with which the employee exercises discretionary powers, (3) the employee's relative freedom from supervision, and (4) the relationship between the employee's salary and the wages paid other employees for the kind of nonexempt work performed by the supervisor. *Id.; see also Vela et al. v. City of Houston et al.,* 276 F.3d 659, 677 (5th Cir. 2001).

It follows that Plaintiff's pleading requirement is merely to set forth sufficient plausible facts that (1) she worked more than forty hours in any given workweek; and (2) she was not paid one-and-one-half times her regular hourly rate for the hours she worked in excess of forty hours in any given workweek. Plaintiff's Complaint certainly does as much. (*See* ECF #17 at ¶¶ 76-79). Plaintiff is not required to provide evidence in her complaint disproving any possible affirmative defense. After all, modern federal pleading standards are meant to ensure the defendant of "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 (2007). Defendants, who wish to raise the defense, are certainly on notice of that defense and the facts which they must prove to avail themselves to the same. Nevertheless, Plaintiff's Complaint contains ample allegations refuting Defendant's executive exemption defense. (*See* ECF #17 at ¶¶ 57-75). By relying on affidavits and documentary evidence, Defendants are essentially requesting the Court to treat their Motion as a motion for summary judgment. However, "[c]onverting the Motion from a Rule 12(b)(6) motion to dismiss to a Rule 56 motion for summary judgment makes little sense under the circumstances and would prejudice Plaintiff[], who ha[s] not yet had the opportunity to depose [Defendants] or otherwise to develop the factual record necessary to challenge the assertions in [their] affidavit[s]." *Sanchez*, *supra*, 2015 U.S. Dist. LEXIS 93782 at *7.

In any event, the documentary evidence submitted by Defendants highlights the likelihood of genuine issues of material fact regarding their affirmative defense that Plaintiff's employment met all the requirements of the executive exemption. For example, Defendants confirm that in the four months Plaintiff was employed, she worked twelve full shifts as a floor nurse, performing no managerial or supervisory tasks whatsoever. (*See* ECF #22 at p. 14). Moreover, the job description for the LPN-Unit Manager casts serious doubt as to whether the position is in fact exempt. (*See* ECF #20-10). The job description confirms that Plaintiff did not have the authority to hire or fire any other employees. *See id*. The job description enumerates thirty-two different "essential functions" for the position, many of which contain sub-categories. But, only one of these functions is self-described as "supervisory." *See id*. The other thirty-one "essential functions" are admittedly, non-supervisory. *See id*. Defendants are merely inflating the significance of Plaintiff's limited supervisory functions at the pleadings stage. *See Jackson, supra*, 56 Fed. Appx. at 271 ("[W]hile Adamcyk *tried to give the impression* that Jackson had great independent authority," the documents and other testimony 'concerning hiring and firing, and granting raises clearly show[] that Jackson had to clear any such action with Adamcyk.'").

Furthermore, there is sufficient doubt at this point whether Plaintiff was paid on a salary basis. Defendants submit that, despite Plaintiff's pay stubs indicating that she was compensated at a rate of $33.00 per hour, she was actually paid a salary. (*See* ECF #22 at pp. 9-10). But, Defendants are careful not commit to any "predetermined amount of compensation each pay period" that Plaintiff was to receive. 29 C.F.R. § 541. Instead, Defendants point out that the amounts always exceeded the minimum threshold of $684 per week. However, the salary basis requirement also requires that the "predetermined amount of compensation each pay period", regardless of whether it eclipses $684 per week, "cannot be reduced because of variations in the quality or quantity of

the employee's work." *See* 29 C.F.R. § 541. Defendants Motion then provides a litany of reasons why Plaintiff's week-to-week compensation was constantly fluctuated. But, the exemption provides only narrow circumstances in which such variations are acceptable. *See* DOL Factsheet #17G ("Subject to exceptions listed below, an exempt employee must receive the full salary for any week in which the employee performs any work, regardless of the number of days or hours worked."). Whether Defendants proffered reasons for the variations in Plaintiff's pay fall within the limited permissible exceptions is likewise subject to discovery.

**IV.     CONCLUSION**

For the forgoing reasons, Plaintiff respectfully requests that Defendants' Motion be denied in its entirety.


                                        Respectfully submitted,


                                        s/ *Michael L. Fradin*
                                        Michael L. Fradin, Esq.
                                        8401 Crawford Ave. Ste. 104
                                        Skokie, IL 60076
                                        Telephone: 847-986-5889
                                        Facsimile: 847-673-1228
                                        Email: mike@fradinlaw.com


                                        By: /s/ *James L. Simon*
                                        James L. Simon (*pro hac vice* forthcoming)
                                        THE LAW OFFICES OF SIMON & SIMON
                                        5000 Rockside Road
                                        Liberty Plaza – Suite 520
                                        Independence, OH 44131
                                        Telephone: (216) 525-8890
                                        Email: james@bswages.com


                                        By: /s/ *Clifford P. Bendau, II*
                                        Clifford P. Bendau, II (*pro hac vice* forthcoming)
                                        Christopher J. Bendau (*pro hac vice* forthcoming)
                                        BENDAU & BENDAU PLLC
                                        P.O. Box 97066
                                        Phoenix, Arizona 85060

Telephone AZ: (480) 382-5176
Email: cliff@bswages.com
chris@bswages.com

## **CERTIFICATE OF SERVICE**

I hereby certify that all necessary parties were served with a true and complete copy of

the forgoing on January 11, 2022, through the Court's Electronic Case Filing system.

/s/      *Michael L. Fradin*